# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | | |
|---|---|---|
| LOIS ANN BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:23-cv-00006 |
| | ) | |
| v. | ) | Hon. Robert S. Ballou |
| | ) | United States District Judge |
| WAL-MART STORES EAST, LP, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Lois Ann Brown slipped and fell on black ice in the parking lot of Defendant Wal-Mart Stores East, LP ("Walmart") and brings this action to recover for her personal injuries in the accident. Because Brown cannot show that Walmart had actual or constructive notice of the black ice where she fell or establish that the store failed to satisfy its duty of care, I **GRANT** Walmart's motion for summary judgment.

## I.   Background

The record evidence, viewed in the light most favorable to Brown, shows that on the evening of January 27, 2021, a snowstorm entered the Lynchburg area. Data from the National Weather Service indicates that approximately two inches of snow fell overnight, with temperatures falling as low as 24 degrees Fahrenheit. Dkt. 31-5. Brown, the owner and operator of a local daycare, awoke in the early morning hours of January 28, 2021, to "a dusting" of snow in her yard and on her driveway. Dkt. 27-1 at 33:22–34:22. The road outside her house was clear, but wet. *Id.*

Brown drove her all-wheel drive 2009 Chevrolet Tahoe to the daycare in time to open at 6:30 a.m. The roads were clear on her drive to work. *Id.* at 36:10–22. Brown observed that the daycare parking lot was clear after a contractor had come that morning to scrape it. She remained

at work until about 8:00 a.m., when she drove her husband to a doctor's appointment. *Id.* at 31:16–32:24. She observed that the roads were clear, but wet, on her drive to the doctor's office, and that the parking lot of the doctor's office was also clear, but wet. *Id.* at 41:8–14. Brown was not allowed to wait in the doctor's office because of the COVID-19 pandemic, so she drove to Walmart where she planned to shop until her husband was ready to be picked up from his appointment.

At approximately 8:31 a.m., Brown pulled into the Walmart parking lot and searched for a clear parking spot. *Id.* at 44:9–46:9. According to Plaintiff's expert, Steven Grecco, the temperatures in Lynchburg had dropped below freezing, creating the conditions for "black ice" on untreated surfaces. Dkt. 25-1 at 2. Brown testified that she did not notice any difference between the Walmart parking lot and those of her daycare or the doctor's office—they all looked clear, but wet, and she did not notice any ice. *Id.* She did not see any snow removal efforts underway in the parking lot—no snowplows or employees putting down ice melt or rock salt. *Id.* at 46:18–23. Brown found a spot she believed to be clear and parked her vehicle. *Id.* at 44:12–14.

Brown grabbed her purse, opened the door to exit her Tahoe, and looked down at the ground, where she saw what she thought looked like wet pavement. *Id.* at 50:13–21. Dkt. 27-2. She confirmed that she did not see any "ice," "icy substance" or "snow" before exiting her vehicle. Dkt. 27-1 at 51:3–6. She testified that she got out of the truck and the "next thing [she] remember[ed]" was being on her hands and knees on the ground. *Id.* at 49:18–50:3. Brown retrieved her purse, which had fallen to the ground, crawled back to her vehicle, and pulled herself up by the running board. *Id.* She realized that she had fallen on ice because she was not able to stand up without grabbing onto the car. *Id.* at 55:5–20. Brown got back into her vehicle

and drove to a different aisle, where she parked, exited her vehicle, and walked into the store. At no point was she talking on her cell phone or eating or drinking anything. *Id.* 62:23–63:4.

Brown testified that the moment she walked into Walmart, a store employee saw her and realized she had fallen because her clothes were wet. *Id.* at 68:3–69:22. The employee retrieved the assistant manager, Anthony Ware, who was in charge that day. Ware asked Brown if she had fallen in the parking lot, she replied that she had, and the two went out to the parking lot to examine the area where she fell. *Id.* at 71:8–77:11. Ware took pictures of the area and shared that he had "almost bust[ed] his ass in the parking lot [that] morning." *Id.* at 71:11–22. Ware also told Brown that the contractors Walmart had hired to clear the parking lot had arrived late that morning. *Id.* at 71:11–72:7.[1] Ware completed an incident report, in which he stated that "[i]ce made customer fall when getting out her car [sic]." Dkt. 31-10.

Surveillance video shows a pickup truck with a raised snowplow attached to the front grill driving up and down the parking lot at approximately 7:34 a.m. Dkt. 27-2. The truck is not marked and is not depicted using the snowplow. *Id.* The parking lot at the time appears wet with no accumulated snow or patches of ice. Walmart submitted the declaration of Tyler Pritt, a former asset protection coach at the store, stating that a "third-party snow/ice removal contractor/truck" was "on site applying chemicals and/or scraping the parking lot as necessary" the day Brown fell. Dkt. 34-1 at 2. He further swears that at "approximately 7:30 a.m., [he] walked out, inspected the parking lot and spoke with [the contractors]." *Id.* He states that he

---

[1] Notably, Ware testified that he did not tell anyone that he "almost bust[ed] his ass [that] morning," when he arrived to open the store at approximately 5:50 a.m. and had not stepped on the black asphalt of the parking lot until he walked out to inspect the area with Brown. *Id*; *Id.* at 19:24-20:7. He further testified that he was not aware of whether, or to what degree, the third-party company with which Walmart contracts scraped or treated the parking lot for snow and ice. *Id.* at 21:11–24:7.

3

"requested that they be sure to salt certain parking areas on the side of the store." He also confirms that the surveillance video depicts the contractors with whom he spoke. Dkt. 34-1 at 2.

Brown intended to shop after she and Ware investigated the scene. However, when she began pushing a shopping cart, she realized that she had significant pain in her left thumb. Dkt. 27-1 at 78:11–15; 84:19–85:1. She left Walmart and returned to the doctor's office to wait for her husband. She drove her husband back to his car and then went to an urgent care facility. Someone working at the urgent care facility told Brown that she needed to go to the emergency room, which she did. The doctor informed her that she had a small fracture in her thumb and a concussion. *Id.* at 84:5–14. Brown received physical therapy for her concussion and steroid injections for her thumb. She later had surgery on her thumb. At the recommendation of her orthopedist, she continues to wear a hand brace. *Id.* at 92:23–93:17.

In its motion for summary judgment, Walmart argues that Brown has failed to prove that it had actual or constructive notice of the dangerous conditions in the parking lot prior to her fall. Walmart also argues that the company satisfied its duty of care as a matter law by hiring a contractor to clear the lot. Alternatively, Walmart argues that Brown was contributorily negligent. Dkt. 27 at 8–10. I find that Walmart is entitled to summary judgment because Brown cannot prove that Walmart had actual or constructive knowledge of the ice on which Brown fell or that Walmart failed to satisfy its duty of care.  Thus, it is unnecessary to reach the question of whether Brown was contributorily negligent.

## II.   Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Once the movant

properly makes and supports a motion for summary judgment, the opposing party must show that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine dispute of material fact exists, the Court views the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. However, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *See Glover v. Oppleman*, 178 F. Supp.2d 622, 631 (W.D. Va. 2001). Rather, the "nonmoving party must [] go beyond the pleadings and affidavits and show that there are 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 709–10. The "mere existence of a scintilla of evidence" is insufficient to repel an "adequately supported summary judgment motion." *Anderson*, 477 U.S. at 252. Further, "conclusory allegations or denials, without more, are insufficient to preclude" summary judgment. *Bandy v. City of Salem*, 59 F.4th 705, 710 (4th Cir. 2013).

**III.     Analysis**

"The law applicable to slip-and-fall cases is well settled." *Rife v. Tractor Supply Co.*, No. 1:21-cv-00016, 2022 WL 2793087 (W.D. Va. July 15, 2022).[2] A business "must use ordinary care to keep [its] premises reasonably safe for an invitee, although [it] is not an insurer of the invitee's safety." *Tate v. Rice*, 315 S.E.2d 385, 388 (Va. 1984). To establish that a business was negligent in maintaining its premises, a "[p]laintiff must [first] submit evidence that [the business] possessed 'actual or constructive notice of the *specific* unsafe condition that injured her.'" *Hall v. DLC Mgmt. Corp.*, No. 7:11-cv-00298, 2013 WL 1743865, at *6 (W.D. Va. Apr.

---

[2] Virginia negligence law applies to this diversity action. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)

5

23, 2013) (quoting *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 453 (4th Cir. 2004)) (emphasis in original). The plaintiff must then demonstrate "that the defendant acted unreasonably in response to the hazardous condition of which it had notice." *Eure v. Kroger Ltd. P'ship I*, 7:11-cv-00190, 2012 WL 896347, at *6 (March 15, 2012). Here, there is no evidence that Walmart had either actual or constructive knowledge of the dangerous condition that caused Brown's fall. There is also no evidence that Walmart violated its duty of care in the maintenance of its parking lot. Thus, Plaintiff has failed to make a prima facie case of negligence, and summary judgment is appropriate.

A.

There is no evidence that Defendant had actual or constructive knowledge of the ice patch which caused Plaintiff's injury. Brown argues that the court should find actual knowledge because Ware, the assistant store manager, also slipped getting out of his car that morning, and was therefore aware of the icy conditions in the parking lot. Dkt. 31 at 6. Plaintiff's argument is based solely on Ware's statement to Brown that he "almost busted [his] ass in the parking lot [that] morning." *Id.* at 3, 6. I find that Ware's statement is insufficient to show that Defendant had actual knowledge of the ice patch. Ware's statement does not specifically refer to the Walmart parking lot, and Brown testified that she only "assum[ed]" that the statement referred to the Walmart parking lot. Dkt. 27-1 at 76:5–10 . Indeed, Ware testified that he did not have any difficulty exiting his vehicle or entering the store when he arrived at work. Dkt. 31-13 at 16:17–17:12. A reasonable juror viewing these facts would have to "resort to speculation and conjecture" to find that Ware's statement referred to the Walmart parking lot. *Harrison v. The Kroger Co.*, 737 F.Supp.2d 554, 557 (W.D. Va. 2010). Such "unsupported speculation" cannot support a finding of actual knowledge, and "is not sufficient to defeat a summary judgment

6

motion." *CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658-59 (4th Cir. 2020) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

Additionally, even accepting that Ware's statement referred to the Walmart parking lot, it is insufficient to support a finding that Walmart had actual knowledge of the ice patch that caused Brown's injuries. The uncontested evidence shows that, when Mr. Ware arrived at Walmart, he parked on the opposite side of the store from where Brown fell. Dkt. 31-13 at 28:12-16. Dkt. 31 at 4. To establish premises liability, Virginia law requires the landowner have knowledge of the "*specific* unsafe condition" that caused Plaintiff's injuries. *Hall*, 2013 WL 1743865, at *6 (quoting *Hodge*, 360 F.3d at 453) (emphasis in original). Thus, Ware's knowledge of icy conditions at one end of the parking lot does not imply actual knowledge of an ice patch at the other end of the lot. *See Logan v. Boddie-Noell Enterprises, Inc.*, 4:11-cv-00008, 2012 WL 135284, at *6 (W.D. Va. Jan. 18, 2012) (finding that awareness of dangerous conditions in the parking lot was insufficient to establish actual or constructive knowledge of a dangerous conditions in the store's entranceway).

Similarly, Ware's purported knowledge of icy conditions in the parking lot is too remote in time to prove that Walmart had actual knowledge of the hazard that led to Brown's fall. *See Hodge*, 360 F.3d at 449, 453 (requiring plaintiff to show that defendant knew of a hazard in the time "immediately preceding" the plaintiff's injury to establish actual knowledge). Ware arrived at the store and allegedly slipped getting out of his car over an hour before Pritt inspected the parking lot and over two hours before Brown fell. Dkt. 31-13 at 8–16. Dkt. 34-1 at 1. The fact that Ware may have known that the parking lot was icy at 5:50 a.m. has no bearing on whether Defendant knew there was ice in the lot at approximately 8:30 a.m. when Brown fell. It's possible that the ice formed after Pritt inspected the lot at 7:30 a.m. or in the moments before

7

Brown fell. Absent evidence that Defendant was aware of the ice just before the incident, a reasonable juror could not conclude that Walmart had actual knowledge of the hazard without resorting to speculation. *Hodge* 360 F.3d at 453.

Plaintiff separately contends that Walmart was on notice of icy conditions in its parking lot because its employees were or should have been aware of the winter storm in Lynchburg the night before Brown fell. Dkt. 31 at 7. But mere awareness of general weather conditions is insufficient to prove constructive knowledge. *Adkison v. Frizell*, 1:11-cv-00089, 2012 WL 4127617, at *3 (W.D. Va. (Aug. 14, 2012); *Thomas v. Omni Hotels Mgmt. Corp.*, 742 F. App'x. 729, 732 (4th Cir. 2018) (finding that weather conditions "are not sufficient to impose actual or constructive notice… that ice would form…"). Rather, establishing "constructive knowledge or notice of a defective condition of a premise" requires "evidence that the defect was [1] noticeable and [2] had existed for a sufficient length of time to charge its possessor with notice of its defective condition." *Grim v. Rahe, Inc.*, 434 S.E. 2d 888, 890 (Va. 1993).

Plaintiff has failed to offer any evidence that the hazard was "noticeable." To the contrary, the evidence in the record suggests that the patch of ice Brown slipped on was not obvious. For example, Brown testified that the parking space "looked clear" and that she believed she was stepping on to "wet pavement," not ice, when she got out of her car. Dkt. 27-1 at 50:15–51:9. Similarly, Ware testified that he did not realize there was ice where Brown fell until he was about one foot away from the area. Dkt. 31 at 20:19–21:8.

Nor has Plaintiff offered any evidence that the ice "existed for a sufficient length of time" for Walmart to notice it. Under Virginia law, "if the evidence fails to show *when* a defect occurred on the premises, the plaintiff has not made out a *prima facie* case [of negligence]. *Grim*, 434 S.E. 2d at 890 (emphasis in original). For example, in *Thomas*, the Fourth Circuit affirmed

8

summary judgement, finding that plaintiff had failed to offer any evidence showing when the icy condition that caused her to slip formed. 742 F. App'x. at 732–34. The court explained that absent this evidence a jury could not determine whether "with reasonable diligence [defendant] staff should have discovered the icy condition before [plaintiff] suffered her injury" and, thus, could not find that defendant had constructive notice of the hazard. *Id.* Likewise, here, Brown has failed to offer any evidence showing when the icy condition that caused her to slip arose. "It is just as logical to assume that" the ice froze in the minutes before Brown pulled into the parking space "as it is to infer that it had been there long enough that [Wal-Mart] should… have known about it." *Winn-Dixie Stores, Inc. v. Parker*, 396 S.E.2d 649, 651 (Va. 1990). Consequently, Brown has failed to offer evidence sufficient to establish that Walmart had constructive notice of the hazardous conditions in its parking lot.

B.

There is also no evidence that Walmart failed to satisfy its duty to maintain its premises in a reasonably safe condition. The standard of care applicable to store-owners in Virginia is clear:

> In carrying out this duty [the store owner] was required to have the premises in a reasonably safe condition for [the customer's] visit; to remove, within a reasonable time, foreign objects from its floors, which it may have placed there or which it knew, or should have known, that other persons have placed there; to warn the [customer] of the unsafe condition if it was unknown to her, but was, or should have been, known to the [store owner].

*Colonial Stores Inc. v. Pulley*, 125 S.E.2d 188, 190 (Va. 1962). In cases involving winter weather, Virginia courts have held that ordinary care requires only that the business owner "use reasonable care to remove natural accumulations of snow and ice from walkways reserved for the common use…within a reasonable time after the storm ceases." *Langhorne Road Apts., Inc. v. Bisson*, 150 S.E.2d 540, 543 (Va. 1966).

Plaintiff argues that Walmart failed to satisfy its duty for a number of reasons, including Walmart's purported failure to "pre-treat[],""clear [and] scrape," or "inspect," the lot, and to communicate with employees about the "widely predicted storm." Dkt. 31 at 5–6. Plaintiff infers that Walmart "made no efforts at all to remove ice and snow" from the following: 1) Ware's testimony that the parking lot had a "little slushy feel" and that he didn't see "chemicals, salt or other materials" in the parking spaces after Brown's fall, Dkt. 31 at 3–4; and 2) Brown's testimony that there were no chemicals on her clothes after she fell, Dkt. 31 at 3; and 3) Walmart's testimony that it did not know when the third-party contractor started or finished or whether a Walmart employee inspected the contractor's work, *id.*[3] I find that no reasonable juror could find that Walmart was negligent based on this evidence. Ware also expressly testified that he had no knowledge about what the contractor did or did not do that morning. Dkt. 31-13 at 33:13–34:5. Considering this testimony, it is purely speculative to conclude that no salt or chemicals were applied merely because an employee, with admittedly no knowledge of the contractor, did not see them. Similarly, it is speculative to conclude from Brown's testimony that there were no salt or chemicals applied to the parking lot. The fact that Brown had no chemicals on her clothes proves only that. Finally, the corporate designee's lack of knowledge is not probative of whether the lot was cleared.

To survive summary judgment, the plaintiff must offer evidence that the defendant did not satisfy its duty of care. Here, Brown must present specific facts showing that there is a genuine dispute as to whether or not Walmart met its duty of reasonable care.

---

[3] Walmart subsequently submitted a declaration stating that a third-party contractor did, in fact, clear the parking lot the morning after the snowstorm, and that the lot was inspected at approximately 7:30 a.m., an hour prior to Brown's fall. Dkt. 34-1 at 1–2.

*Glover*, 178 F. Supp.2d at 631. Brown's argument improperly attempts to shift to Walmart the burden to show the steps it undertook to clear the parking lot by suggesting an absence of melting chemicals or that Walmart does not know when the third-party contractor finished its work. The burden is on Brown to provide affirmative evidence or show specific facts that Walmart's actions (or its failure to act) was not reasonable. *See Joseph v. Target Stores, Inc.*, No. 20-1730, 2023 WL 2908811, at *3 (4th Cir. Apr. 12, 2023) (quoting *Celotex*, 477 U.S. at 325) (the moving party need "not [] 'produce evidence showing the absence of a genuine issue of a material fact.'"). Brown simply has come forward with no such facts.

## IV. Conclusion

Considering the record as a whole and drawing all inferences in the light most favorable to Brown, a reasonable jury could not find that Walmart had actual or constructive knowledge of the condition which caused her to slip. Likewise, a reasonable jury could not conclude that Walmart satisfied its duty of care. Thus, Brown has not made out a prima facie case of negligence as a matter of law. Accordingly, Walmart's Motion for Summary Judgment (Dkt. # 26) is **GRANTED.**

Entered:  January 12, 2024

*Robert S. Ballou*

Robert S. Ballou
United States District Judge